IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| WC 56 EAST AVENUE, LLC, | § § § § | Case No. 1:19-bk-11649 |
| Debtor-in-Possession. | | |

| | | |
|---|---|---|
| WC 56 EAST AVENUE, LLC | § § | |
| Plaintiff, | § § | Adversary Proc. No. _____ |
| v. | § § | |
| PENNYBACKER CAPITAL MANAGEMENT, LLC, PENNYBACKER V, LP, PENNYBACKER V GP, LLC, MARK HAWKINS, U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, 56 EAST AVENUE, LP, 56 EAST AVENUE, GP, LLC and 56 EAST AVENUE GP OWNERSHIP TRUST, AND CALMWATER ASSET MANAGEMENT, LLC, | § § § § § § § § § § § § | |
| Defendants. | | |

# COMPLAINT

Plaintiff WC 56 East Avenue, LLC ("Plaintiff" or "Borrower") files this Complaint against U.S. Real Estate Credit Holdings III-A, LP ("Original Lender") and Calmwater Asset Management, LLC ("Calmwater" and together with Original Lender, "the Calmwater Entities") and Pennybacker Capital Management, LLC ("Pennybacker"), Pennybacker V, LP, Pennybacker V GP, LLC, 56 East Avenue, LP ("Noteholder"), 56 East Avenue GP, LLC, 56 East Avenue GP Ownership Trust (collectively, "the Pennybacker Entities"), and Mark Hawkins ("M. Hawkins," and collectively with Calmwater Entities, and the Pennybacker Entities, the "Defendants") and in

1

support thereof alleges the following:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C §§ 151, 157 and 1334.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1408 and 1409. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A) and (O).

**PARTIES**

3. Plaintiff is a Delaware limited liability company, authorized to conduct business in the State of Texas.

4. Original Lender is an Irish limited partnership and may be served with process through its registered agent, Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

5. Calmwater is a Delaware limited liability company with a principal place of business at 11755 Wilshire Boulevard, Suite 1400, Los Angeles, California 90025.

6. Noteholder is a Texas limited partnership with a principal place of business at 3800 North Lamar Blvd., Suite 350, Austin, Texas 78756.

7. Defendant 56 East Avenue GP, LLC is a Texas limited liability company with a principal place of business at 3800 North Lamar Blvd., Suite 350, Austin, Texas 78756.

8. Defendant 56 East Avenue GP Ownership Trust is a trust that may be served with process through its Trustee, Mark L. Hawkins, with a place of business at Armbrust & Brown, PLLC, 100 Congress Avenue, Suite 1300, Austin, Texas 78701-2744.

9. Defendant Pennybacker Capital Management, LLC is a Texas limited liability company with a principal place of business at 3800 North Lamar Blvd., Suite 350, Austin, Texas 78756.

10. Defendant Pennybacker V GP, LLC is a Delaware limited liability company with a principal place of business at 3800 North Lamar Blvd., Suite 350, Austin, Texas 78756.

11. Defendant Pennybacker V, LP is a Delaware limited partnership with a principal place of business at 3800 North Lamar Blvd., Suite 350, Austin, Texas 78756.

12. Defendant M. Hawkins is an individual with a principal place of business at Armbrust & Brown, PLLC, 100 Congress Avenue, Suite 1300, Austin, Texas 78701.

## FACTS

### A. The Loan Documents

13. Plaintiff executed that certain Loan Agreement executed as of December 12, 2017 (the "Loan Agreement") in favor of Original Lender. A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A** and is incorporated herein as though set forth in full.

14. Pursuant to the Loan Agreement, Plaintiff executed that certain Promissory Note dated December 12, 2017 in the original principal amount of $15,000,000.00 (the "Note") in favor of Original Lender. A true and correct copy of the Note is attached hereto as **Exhibit B** and is incorporated herein as though set forth in full.

15. To secure payment of the Note, Plaintiff executed that certain Deed of Trust, Security Agreement, and Financing Statement (the "Deed of Trust") in favor of Cyrus N. Ansari, Esq. as Trustee for the benefit of Original Lender. The Deed of Trust grants Original Lender a security interest in, inter alia, the real property commonly known as 50-56 East Avenue, Austin, Texas as more fully described in the Deed of Trust (the "Property"). A true and correct copy of the Deed of Trust is attached hereto as **Exhibit C** and is incorporated herein as though set forth in full.

16. To further secure payment of the Note, Plaintiff executed that certain Assignment of Leases and Rents dated December 12, 2017 (the "ALR") in favor of Original

3

Lender pursuant to which Plaintiff assigned and transferred all rights, title, and interest in the Leases and Rents (as those terms are defined in the ALR). A true and correct copy of the ALR is attached hereto as **Exhibit D** and is incorporated herein as though set forth in full. The Loan Agreement, the Note, the Deed of Trust, the ALR, and all other documents executed in connection therewith shall hereinafter be collectively referred to as the "Loan Documents." All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Loan Documents.

17. The Maturity Date of the Note was January 1, 2019 and was extended to January 1, 2020 by Plaintiff pursuant to the terms of the Loan Agreement.

### B. The Real Property

18. The Property consists of a 1.12-acre parcel located in the Rainey Street District in downtown Austin, Texas, which is considered one of the hottest real estate markets in the United States.

19. The Real Property is unique given the entitlements associated with the Real Property, and it is zoned as of right, for a 15:1 FAR development with no height restriction, enabling an over 700,000 SF high-rise tower to be built thereon.

20. The value of the Property is approximately $33,000,000 and greatly exceeds the approximate $15,000,000 owed by Plaintiff pursuant to the Loan Documents.

### C. The Alleged Event of Default

21. On or about October 15, 2019, Borrower received a letter dated October 9, 2019 from Original Lender (the "Default Notice"), alleging, inter alia, an Event of Default occurred under the Loan Documents because Borrower "violated Section 9.10 (a), (b) and (c) of the Loan Agreement by acquiring additional property other than the Property as described in the Loan Documents . . ." (the "Alleged Event of Default").

22. The Default Notice does not identify the "additional property" Original Lender alleges Borrower acquired in contravention of the Loan Documents.

23. The Default Notice also provides, *inter alia*, that based on the Alleged Event of Default, Original Lender was immediately exercising its right to accelerate the Maturity Date of the Note and declare the outstanding balance under the Loan Documents immediately due and payable. A true and correct copy of the Default Notice is attached hereto as **Exhibit E** and is incorporated herein as though set forth in full.

24. Prior to sending the Default Notice, no representative or agent of Original Lender had any contact with any representative or agent of Borrower regarding the Alleged Event of Default.

25. Original Lender also sent Borrower, among others, a Notice of Foreclosure dated October 15, 2019 (the "Notice of Foreclosure") advising Borrower, inter alia, that a trustee's sale of the Real Property was scheduled for November 9, 2019. A true and correct copy of the Notice of Foreclosure is attached hereto as **Exhibit F** and is incorporated herein by reference as though set forth in full.

26. On October 16, 2019, Borrower sent Original Lender a letter titled "Demand to Rescind and Withdraw Wrongful Acceleration and Foreclosure" (the "First Rescission Demand"). A true and correct copy of the First Rescission Demand is attached hereto as **Exhibit G** and is incorporated herein by reference as though set forth in full.

27. Pursuant to the First Rescission Demand, Borrower, *inter alia*, demanded that Original Lender rescind the Default Notice and withdraw the Notice of Foreclosure.

28. After Original Lender failed to rescind the Default Notice and withdraw the Notice of Foreclosure, Borrower sent Original Lender another letter dated October 22, 2019 titled "Second Demand to Rescind and Withdraw Wrongful Acceleration and Foreclosure" (the

"Second Rescission Demand"). A true and correct copy of the Second Rescission Demand is attached hereto as **Exhibit H** and is incorporated herein by reference as though set forth in full.

29. Pursuant to the Second Rescission Demand, Borrower, inter alia, again demanded that Original Lender rescind the Default Notice and withdraw the Notice of Foreclosure.

30. Despite the repeated demand, Original Lender refused and failed to rescind the Default Notice and withdraw the Notice of Foreclosure.

31. Despite repeated requests, Original Lender also did not produce any document that establishes that Borrower "acquired any additional property other than the Property as described in the Loan Documents" as alleged in the Default Notice.

32. Original Lender instead relied on that certain Deed Without Warranty dated March 20, 2019. A true and correct copy of the Deed Without Warranty is attached hereto as **Exhibit I** and is incorporated herein by reference as though set forth in full.

33. The Deed Without Warranty relates to a certain 0.252 acres of land which is a portion of 0.9702 acres of land owned by the City of Austin to which the City of Austin believes Plaintiff may have an interest in, but Plaintiff does not own (the "Alleged Additional Property").

34. The Deed Without Warranty is not a valid conveyance of the Alleged Additional Property to Plaintiff. The Grantor (as that term is defined in the Deed Without Warranty) under the Deed Without Warranty is not and was not the fee owner of the Alleged Additional Property, as of March 2019 (the date of the supposed transfer) and therefore could not have transferred anything to Borrower in March 2019. The Grantor is listed as Austin-Travis County Mental Health Mental Retardation d/b/a Integral Care and f/d/b/a Austin Travis County Integral Care but the title records show that the actual fee owner of the property is the City of Austin, and has been since 1953.

6

35. The Deed Without Warranty does not clearly purport to convey real property or indicate that the Grantor has a right to any real property.

36. The Deed Without Warranty uses the following conditional granting language "*all of Grantor's right, title and interest**, if any,** in and to the* [Alleged Real Property]". This conditional language does not create a proper conveyance of real property.

37. The Deed Without Warranty was not delivered to Borrower by the Grantor, Borrower did not accept the Deed Without Warranty from the Grantor, and no consideration was exchanged for this purported conveyance. Borrower did not consent to, and had no knowledge of the recording of the Deed Without Warranty. No sale was conducted, and no bill of sale or other closing document related to this Alleged Additional Property is known by Borrower to exist.

38. Borrower did not purchase the Alleged Additional Property.

39. Borrower did not acquire, and has not acquired, the Alleged Additional Property, or any additional property, to cause an Event of Default under the Loan Documents to occur.

40. Prior to Original Lender declaring the Alleged Event of Default, Borrower was current on all monetary obligations under the Loan Documents and no Event of Default existed under the Loan Documents.

**D. Communications Between Noteholder Entities and Borrower Prior to The Alleged Event of Default**

41. On September 13, 2019, Alexander Zabik, Managing Director and Portfolio Manager of Pennybacker ("Zabik"), contacted Jeremy Stoler ("Stoler") of World Class, a corporate affiliate of Plaintiff ("World Class"), to discuss opportunities to lend to World Class and explore other opportunities for the entities to do business together.

42. On September 15, 2019, Zabik and Stoler had a telephone call during which Zabik represented to Stoler that Pennybacker would like to find a way to lend to World Class

7

on real estate projects (presumably to include 56 East Avenue which was maturing in three months) and that the Principals of Pennybacker "would not want to be in an adversarial position with Nate Paul," the publicly known principal of World Class.

43. Based on the representations made by Zabik to Stoler during the September 15, 2019 telephone call, Stoler agreed to a subsequent call on September 18, 2019 with Zabik and Vince Reyna, Principal and Chief Investment Officer of Pennybacker ("Reyna").

44. During the September 18, 2019 telephone call, Reyna reassured Stoler that Pennybacker had an interest in lending to World Class but only in "situations that would be helpful and not in an adversarial position to Nate [Paul]."

### E. Noteholder's Acquisition of the Loan Documents

45. Upon information and belief, Noteholder was formed by the Pennybacker Entities on or about October 29, 2019.

46. Upon information and belief, on October 30, 2019, Noteholder purchased and acquired Original Lender's rights and interest in the Loan Documents.

47. Upon information and belief, based on the declared alleged default under the Loan Documents, the Maturity Date of the Note, and the significant equity in the Property, Original Lender's interest in the Loan Documents was sold to Noteholder at a premium price.

48. Upon information and belief, Original Lender declared the Alleged Event of Default and accelerated the obligations due and owing under the performing Note, so that it could sell its interest in the Loan Documents at a premium price and exit its position.

49. Unbeknownst to Stoler and World Class during the September 15 and September 18, 2019 telephone calls, Pennybacker was, upon information and belief, simultaneously in discussions with Original Lender to purchase Original Lender's interest in the Loan Documents.

50. On November 6, 2019, after Noteholder acquired the Loan Documents, Zabik and Stoler had another telephone call during which Zabik again expressed a desire to work with World Class and inquired as to the status of certain properties in World Class' portfolio. During the November 6, 2019 call, Zabik did not inform Stoler of Noteholder's acquisition of the Loan Documents, or the Pennybacker Entities' interest in Noteholder.

51. Plaintiff only became aware of the Pennybacker Entities' interest in Noteholder on January 13, 2020, after an Order compelling disclosure was entered in response to Debtor's Motion to Compel Lender to Disclose Identity and Affiliations [ECF 29].

52. Upon information and belief, despite Original Lender improperly declaring the Alleged Event of Default, Noteholder insists on proceeding with the foreclosure of the Property so Noteholder can either: (i) obtain ownership of the prime and irreplaceable Property via foreclosure, or (ii) continue to charge interest at the Default Rate to avoid any loss on its investment based on it paying a premium price for acquiring Original Lender's interest in the Loan Documents.

**F.** **The Filing of the Bankruptcy Case**

53. Defendants' scheme for Original Lender to manufacture and declare an improper default resulted in the obligations under the Loan Documents being accelerated and a foreclosure being commenced against the Property.

54. Defendants' action in persisting with an improper foreclosure of the Property, despite Plaintiff providing evidence that the Alleged Event of Default did not occur, forced Plaintiff to file its Voluntary Petition on December 2, 2019, commencing the within bankruptcy case. Plaintiff's filing of its bankruptcy case was necessary to protect its substantial equity in the Property.

55. Defendants' actions in conspiring to manufacture a non-existent event of

default and forcing Plaintiff to file this bankruptcy case caused (i) great reputational damage to Plaintiff in the business community, and (ii) has detrimentally effected Plaintiff's ability to refinance the obligations owed under the Loan Documents.

56. Upon information and belief, the Pennybacker Entities persisted with the improper foreclosure of the Property to force Plaintiff to file its bankruptcy case to make it more difficult and expensive to refinance the obligations under the Loan Documents in order to capitalize on the substantial equity in the Property.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT
(As to Original Lender and Noteholder)

57. Plaintiff hereby incorporates by reference each of the factual allegations contained in the preceding paragraphs.

58. Original Lender breached the terms of the Loan Documents by improperly declaring the Alleged Event of Default.

59. Original Lender and Noteholder breached the terms of the Loan Documents by refusing to rescind the Default Notice and Notice of Trustee's Sale and proceed with the foreclosure sale of the Property.

60. Plaintiff has suffered and continues to suffer damages, which are within the jurisdictional limits of this Court and in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### CIVIL CONSPIRACY
(As to All Defendants)

61. Plaintiff hereby incorporates by reference each of the factual allegations contained in the paragraphs 1 through 56 above.

62. Defendants Original Lender, M. Hawkins, and the Pennybacker Entities acted in concert with each other to accomplish the objective of improperly declaring the Alleged Event of Default by Original Lender and the sale of Original Lender's interest in the Loan Documents to Noteholder to allow Noteholder to execute and benefit from a non-judicial foreclosure with less than thirty days remaining until Maturity Date of the Note. Defendants Original Lender, M. Hawkins, and the Pennybacker Entities together pursued this course of action to allow the charging of the Default Rate under the Note, the improper foreclosure of the Property, and deprive Borrower of the substantial equity in the Property.

63. Upon information and belief, the conspiracy between the Defendants was concocted for Original Lender to exit its position with respect to the Loan Documents on a more favorable basis and the Pennybacker Entities reaping the benefits of acquiring a loan under an alleged default and secured by real property with substantial equity.

64. As a result, Plaintiff has suffered and continues to suffer injury within the jurisdictional limits of this Court and in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

**FRAUDULENT MISREPRESENTATION**
(As to Pennybacker)

65. Plaintiff hereby incorporates by reference each of the factual allegations contained in the paragraphs 1 through 56 above.

66. Pennybacker misrepresented to Plaintiff that it wanted to develop business opportunities with Plaintiff and that the Principals of Pennybacker "would not want to be in an adversarial position with Nate Paul."

67. Pennybacker knew this representation was false as it was in discussions with Original Lender to acquire Original Lender's interest in the Loan Documents.

68. Pennybacker made the representation with the intention that Plaintiff would reveal confidential information regarding the real properties in its portfolio, including the Property.

69. Plaintiff in fact justifiably relied on the representations made by Pennybacker and revealed confidential information to Pennybacker regarding its portfolio, including the Property. Plaintiff revealed said information with the acknowledgement that the information would only be used in furtherance of a lending relationship, and instead, Pennybacker used said information for its own hidden agenda and pecuniary advantage.

70. Plaintiff has suffered damages as a result of the breach in an amount within the jurisdictional limits of this Court and to be proven at trial.

## FOURTH CLAIM FOR RELIEF

**FRAUDULENT MISREPRESENTATION**
(As to the Calmwater Entities)

71. Plaintiff hereby incorporates by reference each of the factual allegations contained in the paragraphs 1 through 56 above.

72. The Calmwater Entities misrepresented to World Class that it would only declare a default under the Loan Documents pursuant to certain enumerated provisions.

73. The Calmwater Entities knew this representation was false as it declared a default under the Loan Documents despite no condition occurring that was in breach of any Borrower covenant under the Loan Documents.

74. The Calmwater Entities made the representation with the intention that Borrower would enter into to a lending relationship with the Calmwater Entities.

75. Plaintiff in fact justifiably relied on the representations made by the Calmwater Entities and entered into a lending relationship with the Calmwater Entities. Plaintiff entered

said relationship with the representation that a default under the loan would only be called by the Calmwater Entities under certain limited enumerated conditions, and instead, the Calmwater Entities called a default under the Loan despite no condition of default having occurred.

76. Plaintiff has suffered damages as a result of the breach in an amount within the jurisdictional limits of this Court and to be proven at trial.

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiff as follows:

1. Actual damages in an amount to be proven at trial in connection with the First, Second, Third Claims for Relief, and Fourth Claim for Relief;

2. Punitive damages in an amount to be proven at trial in connection with the Third Claim for Relief and Fourth Claim for Relief;

3. For attorneys' fees and costs; and

4. For such other relief as this Court may deem just and proper.

Dated: February 27, 2020

CIARDI CIARDI & ASTIN

*/s/ Joseph J. McMahon, Jr.*
Joseph J. McMahon Jr., Esquire
Daniel K. Astin, Esquire
(*Pro Hac Vice* Applications Forthcoming)
1204 N. King Street
Wilmington, DE 19801
Tel: (302) 658-1100

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
(*Pro Hac Vice* Applications Forthcoming)
One Commerce Square
2005 Market Street, Suite 3500
Philadelphia, PA 19103
Tel: (215) 557-3550
Fax: (215) 557-3551
aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com
*Proposed Attorneys for Plaintiff*