**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **In re:** | | |
| **WC 56 EAST AVENUE, LLC,** | § | |
| | § | **Case No. 1:19-bk-11649** |
| **Debtor-in-Possession,** | § | |
| | § | |

---

| | | |
|---|---|---|
| **WC 56 EAST AVENUE, LLC,** | § | |
| | § | |
| **Plaintiff** | § | **Adversary Proc. No. 20-01020** |
| | § | |
| **v.** | § | |
| | § | |
| **U.S. REAL ESTATE** | § | |
| **CREDIT HOLDINGS III-A, LP,** | § | |
| **56 EAST AVENUE, LP, AND** | § | |
| **CALMWATER ASSET** | § | |
| **MANAGEMENT, LLC,** | § | |
| **Defendants.** | | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held.**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable herein pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, Defendants U.S. Real Estate Credit Holdings III-A, LP; 56 East Avenue, LP; and Calmwater Asset Management, LLC move for summary judgment on all claims brought by Plaintiff WC 56 East Avenue, LLC in the above-referenced adversary proceeding.

## I. Summary and Grounds for Summary Judgment

1. Defendants are entitled to summary judgment on Plaintiff's claim that Defendants breached the Loan Agreement on either of the following two grounds:

a. **Because WC 56 was in default, the Defendants did not breach the Loan Agreement.** As is commonplace in similar loan agreements, the Single Purpose Entity covenants in the Loan Agreement require that Plaintiff own only the 1.118-acre parcel that secures the loan. WC 56 broke these covenants through ownership of a 0.252-acre parcel of land that it never disclosed to Defendants and for which it agreed to payment in a condemnation proceeding by the City of Austin.

**b. WC 56 has suffered no damages from any alleged breach of contract.** In the alternative, Plaintiff has suffered no damage as a matter of law from the alleged breach of contract, because Plaintiff is still in possession of the property, no foreclosure has taken place as a result of the allegedly improper notice of default, and WC 56 has not made any payments on the accelerated amounts due as a consequence of the allegedly improper notice of default.

## II. Undisputed Facts

2. In 2015, Plaintiff WC 56 East Avenue, LLC ("WC 56") acquired a 1.118-acre parcel of land in the Rainey Street district near downtown Austin, with the street address of 56

East Avenue. WC 56 acquired the parcel by Special Warranty Deed from Austin Travis County Integral Care.[1]

3. On December 12, 2017, WC 56 entered into a loan agreement with Defendant U.S. Real Estate Credit Holdings III-A, LP ("U.S. Real Estate"), in the amount of $15,000,000 (the "Loan Agreement").[2] WC 56 executed a promissory note,[3] secured by a deed of trust to the 1.118-acre parcel.[4]

4. Paragraph 9.10 of the Loan Agreement provides that WC 56 must be, and remain, a "single purpose entity," owning only the 1.118-acre parcel securing the loan:

> **9.10 SINGLE PURPOSE ENTITY.** Borrower hereby represents and warrants to, and covenants with, Lender that Borrower has been, is and shall remain a single purpose bankruptcy remote entity and shall at all times comply with the following covenants:
>
> (a) The purpose for which Borrower is organized shall be limited to (i) acquiring, owning, developing, holding, selling, leasing, transferring, exchanging, operating and managing Borrower's interest in the Property, (ii) entering into the Loan, (iii) refinancing the Loan in connection with a permitted repayment of the Loan, and (iv) transacting any and all lawful business that is incident, necessary and appropriate to accomplish the foregoing.
>
> (b) Borrower has not owned, does not own and will not own any asset or property other than (i) its interest in the Property and (ii) incidental personal property necessary for and used in connection with the ownership or operation of the same.
>
> (c) Borrower shall not engage in a business other than the ownership, operation and management of the Property and acquire any other property without Lender's prior written consent.

5. Failure to "strictly comply" with the single purpose entity covenant is one of the events of default under Paragraph 11.1 of the Loan Agreement:

[1] Exhibit 1, Special Warranty Deed.

[2] Exhibit 2, Loan Agreement.

[3] Exhibit 3, Promissory Note.

[4] Exhibit 4, Security Agreement.

> **11.1 EVENT OF DEFAULT**. The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Agreement and the other Loan Documents:
>
> . . . .
>
> (i) Single Purpose Entity. Borrower shall fail to strictly comply with the provisions of Section 9.10 (Single Purpose Entity); or

6. In September 2019, U.S. Real Estate learned that WC 56 was a party to a pending condemnation proceeding brought by the City of Austin to condemn a 0.252-acre parcel of land across the street from the 1.118-acre parcel.[5] The following map shows the relative locations of the two parcels, with the 1.118-acre parcel in red and the 0.252-acre parcel in blue:




[5] Exhibit 5, Condemnation Petition.

Further investigation showed that (1) in March 2019, Austin Travis County Integral Care had deeded its interest in the 0.252-acre parcel to WC 56;[6] (2) in September 2019, after appearing through counsel in the condemnation proceeding,[7] WC 56 had warranted to the City that WC 56 was the owner of the 0.252-acre parcel;[8] and (3) WC 56 had agreed to accept $58,000 for the City's possession and use of the 0.252-acre parcel so that the City could build an electric substation on the property.[9]

7. WC 56 never informed U.S. Real Estate of the 2019 deed from Austin Travis County Integral Care; never informed U.S. Real Estate that WC 56 was a party to a condemnation proceeding over the 0.252-acre parcel; never informed U.S. Real Estate that WC 56 had entered into a contract admitting to ownership of the 0.252-acre parcel; and never informed U.S. Real Estate that WC 56 had agreed to a $58,000 payment for the City's possession and use of the 0.252-acre parcel. U.S. Real Estate never consented, in writing or otherwise, to WC 56's acquisition or ownership of the 0.252-acre parcel.[10]

8. On October 9, 2019, U.S. Real Estate exercised its right under Paragraph 11.2 of the Loan Agreement to declare WC 56 East Avenue in default and accelerate the amounts due[11]:

---

[6] Exhibit 6, MHMR Deed Without Warranty.

[7] Exhibit 7, WC 56 Notice of Appearance.

[8] Exhibit 8, Possession and Use Agreement, at ¶ 5.

[9] Exhibit 9, Rule 11 Agreement Regarding Possession and Use Agreement.

[10] Exhibit 10, Declaration of Dean Chang, at ¶ 6; *see also* Exhibit 19, Temporary Injunction Hearing Transcript, at 94:17-20 (Q. Did WC 56 provide any notice at all to the lender about the condemnation proceeding? A. I did not. Again, I can't speak for everyone, but I would assume not since we're here.").

[11] Exhibit 11, Notice of Default.

> **11.2 <u>ACCELERATION UPON EVENT OF DEFAULT; REMEDIES</u>.** Upon the occurrence of any Event of Default specified in this Article 11, Lender may, at its sole option, declare all sums owing to Lender under the Note, this Agreement and the other Loan Documents immediately due and payable. Upon such acceleration, Lender may, in addition to all other remedies permitted under this Agreement and the other Loan Documents and at law or in equity, apply any sums in the Reserves to the sums owing under the Loan Documents and any and all obligations of Lender to fund further disbursements under the Loan shall terminate.

On October 15, 2019, the 1.118-acre parcel was posted for non-judicial foreclosure.[12]

9. WC 56 sued in Travis County District Court and obtained a Temporary Restraining Order to stop the foreclosure.[13] Before the hearing on WC 56's application for temporary injunction, U.S. Real Estate assigned its interest under the Loan Agreement and the deed of trust to Defendant 56 East Avenue, LP.[14] After an evidentiary hearing, the district judge denied WC 56's request for a temporary injunction.[15]

10. The 1.118-acre parcel was re-posted for foreclosure.[16] WC 56 sought another temporary restraining order to stop the foreclosure, but the request was denied.[17] The day before the foreclosure, WC 56 filed a voluntary petition for bankruptcy, staying the foreclosure.[18] WC 56 remains in possession of the 1.118-acre parcel. WC 56 never made any further payments on the loan after default.[19]

---

[12] <u>Exhibit 12</u>, Notice of Foreclosure.

[13] <u>Exhibit 13</u>, Temporary Restraining Order.

[14] <u>Exhibit 14</u>, Assignment to 56 East Avenue.

[15] <u>Exhibit 15</u>, Order Denying Temporary Injunction.

[16] <u>Exhibit 16</u>, Second Notice of Foreclosure.

[17] <u>Exhibit 17</u>, Order Denying Temporary Restraining Order.

[18] ECF No. 1, *In re WC 56 East Avenue, LLC*, No. 1:19-bk-11649 (W.D. Tex. Bankr. Dec. 2, 2019).

[19] <u>Exhibit 10</u>, Declaration of Dean Chang, at ¶ 7; <u>Exhibit 18</u>, Declaration of Chad Milbrandt, at ¶ 4.

## III. Summary Judgment Standard

11. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although factual controversies are resolved in favor of the nonmoving party, this is "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *State Farm Fire & Cas. Co. v. Flowers*, 854 F.3d 842, 844 (5th Cir. 2017). Summary judgment is not thwarted by "conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for the moving party. *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

## IV. Defendants Did Not Breach the Loan Agreement, Because WC 56 Was in Default.

12. WC 56's breach of contract claim is founded on the assertion that WC 56 "does not own" the 0.252-acre parcel (ECF No. 7 ¶ 33), and therefore was not in default of the Loan Agreement's Single Purpose Entity provision. The undisputed facts show that WC 56 does own the parcel. Indeed, in the pending condemnation proceeding with the City of Austin, WC 56 contractually *warranted*[20] that it was the fee owner of the parcel in order to receive a $58,000 payment for the City's use of the parcel:

> The Grantor further warrants that no other person or entity owns an interest in the fee title to the Property and further agrees to indemnify the City from all unreleased or undisclosed liens, claims or encumbrances affecting the Property, arising by or through Grantor but not otherwise.

---

[20] Exhibit 8, Possession and Use Agreement, at ¶ 5. In the Rule 11 Agreement executed shortly afterwards, WC 56 confirmed that the "Property" referenced in the Possession and Use Agreement was the 0.252-acre parcel. Exhibit 9.

WC 56 may not claim ownership to its advantage in the condemnation court, and then, only after the condemnation proceeding was uncovered by its lender, disavow such ownership here and claim that *the lender* is in breach for acting upon WC 56's unambiguous ownership claim.

13. At the temporary injunction hearing, a representative from Austin Energy testified to her interactions on behalf of the City of Austin with WC 56 regarding the 0.252-acre parcel, confirming that WC 56 represented itself as the owner of the parcel:

> Q. In negotiating the possession and use agreement, did WC 56 ever dispute that it actually owned the .252 acres?
>
> A. No, sir.
>
> Q. In fact, isn't it correct that in Paragraph 5 of the agreement itself, WC 56 warranted that it owned the .252 acres?
>
> A. Yes, sir.
>
> …
>
> Q. Has WC 56 or its representatives ever said anything to the City that would cast this warranty in Paragraph 5 into doubt?
>
> A. No, sir.
>
> Q. …you signed this agreement. Would you ever have signed this possession and use agreement if they disputed ownership?
>
> A. No, sir.[21]

Austin Energy needed to build an electric substation to serve the downtown area, and chose a vacant block in the Rainey Street District as the site for the substation.[22] A title history showed that WC 56 East Avenue and Travis County MHMR owned a portion of the site on which the City intended to build the substation: the 0.252-acre strip.[23]

---

[21] Exhibit 19, Temporary Injunction Hearing Transcript, at 112:14-113:9.

[22] *Id.* at 100:5-22.

[23] *Id.* at 101:18-19 ("We discovered in 2014 that we actually didn't own all of that site…."); 104:18-23 ("We got an updated title commitment from Heritage Title, and it actually showed WC 56 as well as Travis County MHMR…as co-owners."); *see also* Exhibit 20, Title Commitment.

14. Austin Energy approached both Travis County MHMR and WC 56 East Avenue about acquiring their interest in the 0.252-acre parcel.[24] Travis County MHMR agreed to sign a deed without warranty, transferring its interest to WC 56.[25] Austin Energy delivered this deed to WC 56 by Austin Energy at the time it was filed in the real property records.[26] And, based on this deed, "the City had confidence that WC 56 was the only owner of the .252 acres."[27]

15. WC 56 claims the deed is not "valid" because it is a deed "without warranty." But deeds without warranty are common in Texas, and their validity is well established. *See Phillips v. Beauly, LLC*, 4:16-CV-02272, 2017 WL 3387187, at *2 (S.D. Tex. Aug. 7, 2017) ("[T]ransferring title via a deed without warranty has no bearing on the validity of the transfer." (citing *Young v. Rudd*, 226 S.W.2d 469, 472 (Tex. Civ. App. 1950)). WC 56 also alleges the deed was not "delivered" (although this is contrary to the sworn testimony of Austin Energy's representative[28]), but even if the deed were not physically delivered, recording the deed in the official public records (as this one was) creates a presumption that the deed was delivered with "the requisite intent that it is to become operative as a conveyance." *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 262 (Tex. 1974).

16. The City made an offer to purchase the 0.252-acre parcel from WC 56, but WC 56 rejected the offer.[29] WC 56 made a counteroffer to trade the 0.252-acre parcel for other land owned by Austin Energy.[30] The City's further attempts to negotiate with WC 56 were

---

[24] Exhibit 19, Temporary Injunction Hearing Transcript, at 105:10-20.

[25] *Id.* at 105:18-20.

[26] *Id.* at 119:3-9.

[27] *Id.* at 107:3-4.

[28] *Id.* at 119:3-9.

[29] *Id.* at 108:3-11.

[30] *Id.* at 108:11-21.

unsuccessful, and so the City filed a condemnation action to acquire the 0.252-acre parcel from WC 56.[31]

17. WC 56 appeared through counsel in the condemnation, and before the special commissioners' hearing, negotiated a deal to allow Austin Energy to take possession of the 0.252-acre parcel to begin construction on the electric substation, in exchange for a payment of $58,000 to WC 56.[32] As part of this "Possession and Use Agreement," WC 56 warranted that "WC 56 East Avenue, LLC" is "the owner in fee of" the 0.252 Acres and "that no other person or entity owns an interest in the fee title to the" 0.252 Acres.[33] The agreement as originally signed and recorded contained several errors, which counsel for WC 56 and the City corrected in a Rule 11 agreement filed in the condemnation proceeding.[34] Together, the Possession and Use Agreement and Rule 11 agreement leave no doubt that WC 56 presented itself then as the sole owner in fee simple of the 0.252-acre strip.

18. Throughout its negotiations with the City over the 0.252-acre strip, WC 56 never informed U.S. Real Estate that WC 56 was the owner of the 0.252-acre strip, that WC 56 had been sued as the landowner in a condemnation proceeding over the 0.252-acre strip, or that WC 56 had entered into a Possession and Use Agreement warranting it was the owner of the 0.252-acre strip and agreeing to a payment of $58,000 in exchange for its use.[35]

19. Under Paragraph 9.10 of the Loan Agreement, WC 56 promised that it "has not owned, does not own and will not own any asset or property other than…its interest in the

---

[31] *Id.* at 110:7-12.

[32] *Id.* at 111:13-114:8.

[33] Exhibit 8, Possession and Use Agreement, at ¶ 5.

[34] Exhibit 9, Rule 11 Agreement Regarding Possession and Use Agreement.

[35] Exhibit 10, Declaration of Dean Chang, at ¶ 6.

Property," and "shall not engage in a business other than the ownership, operation and management of the Property."[36] The fact that WC 56 not only claimed and expressly *warranted* that it owned the 0.252-acre strip, but also surreptitiously negotiated payments with the City of Austin based on WC 56's ownership claim is an unambiguous breach of Paragraph 9.10.

20. WC 56 does not dispute that, if it has an ownership interest in the 0.252-acre strip, it is in default of the Loan Agreement. Indeed, WC 56's counsel admitted as much on the record in the state court proceeding.[37] Yet WC 56 attempts to flip these facts on their head, arguing that it was somehow *the lender* that breached the Loan Agreement when it found out about WC 56's ownership claim and declared a default under Paragraph 9.10. But as the state district court judge aptly put it in denying WC 56's application for temporary injunction, WC 56 cannot have it both ways:

> Had you gone to the other side last summer and said "We didn't know we owned it; mea culpa; we had no idea; we're still not sure we do, but we're letting you know now to be totally transparent," if they were still here trying to foreclose a month early, you'd be in a very different evidentiary posture, because one of the things is likelihood of prevailing on the merits. If you had consistently taken the position "We don't own it" -- which is odd because you're taking the position in this case "We don't own it," but you're taking the position consistently in the condemnation case and in negotiations with the City "We do and we want to be paid for it." And you can't have it both ways.
>
> I understand why you want to maximize return. You're in the business. ***But you can't have it both ways. You can't play it two different ways in two different cases***.[38]

---

[36] Exhibit 2, Loan Agreement, ¶ 9.10(b), (c).

[37] Exhibit 19, Temporary Injunction Hearing Transcript, at 131:3-10 ("THE COURT: You agree if you knew you owned it at the time you entered into this lending agreement, it would be a violation of that agreement if you knew that you owned it and claimed that you owned it? It doesn't have to be after acquired. It could be it was a representation that you didn't own anything else, right? MR. ELLIOTT: Correct.").

[38] *Id.* at 134:9-25 (emphasis added).

21. The same is true here. WC 56 "can't play it two different ways in two different cases." Defendants did not breach the loan agreement by taking WC 56 at its word and acting upon WC 56's express representation and warranty that it did, in fact, own the 0.252-acre strip. WC 56 defaulted as a matter of law, and Defendants are therefore entitled to summary judgment.

**V. WC 56 Is Entitled to No Damages as a Matter of Law.**

22. In the alternative, even if WC 56 were not in default, WC 56's breach of contract claim still fails as a matter of law because WC 56 has suffered no legally cognizable damages.

23. WC 56 pleads that it has suffered the following elements of damage: "(i) great reputational damage to Plaintiff in the business community, and (ii) has detrimentally effected Plaintiff's ability to refinance the obligations owed under the Loan Documents." (ECF No. 7 ¶ 55)

24. As to the first element, under Texas law, "Loss of business reputation is not an element of damages recoverable for breach of contract." *Rubalcaba v. Pac./Atl. Crop Exch., Inc.*, 952 S.W.2d 552, 559 (Tex. App.—El Paso 1997, no writ); *see Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 455 n.7 (5th Cir. 2001) (relying upon *Rubalcaba* for this proposition); *see also Emrit v. Nat'l Acad. of Recording Arts & Scis.*, A-14-CA-392-SS, 2015 WL 518774, at *3 (W.D. Tex. Feb. 5, 2015) (holding under Texas law, "[d]amages to business reputation are not recoverable in a breach of contract claim").

25. As to the second element regarding damage to credit, it is undisputed that WC 56's property has not been foreclosed on, and that WC 56 remains in possession of the property.[39] In these circumstances, federal courts applying Texas law hold that these undisputed facts preclude damages for loss of credit in a breach-of-contract claim:

[39] Exhibit 10, Affidavit of Dean Chang, at ¶ 7; Exhibit 18, Affidavit of Chad Milbrandt, at ¶ 4.

> Texas courts do recognize that loss of credit is recoverable as actual damages, but to recover for loss of credit "[t]here must be a showing of injury, as well as proof of the amount of that injury." Here, it is undisputed that a foreclosure did not occur, and Plaintiff remains in possession of the property. Plaintiff's speculative allegation regarding the potential loss of credit is not sufficient to satisfy the fourth element of a breach of contract claim.

*Tierranegra v. JPMC Specialty Mortgage LLC*, 7:18-CV-347, 2019 WL 92190, at *4 (S.D. Tex. Jan. 2, 2019) (footnotes omitted) (citing *Mead v. Johnson Grp.*, 615 S.W.2d 685, 688 (Tex. 1981) and *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 872 (Tex. App.—Dallas 2008)).

26. WC 56 argues that, but for being "force[d]" into voluntary bankruptcy on December 2, 2019, it would have been able to refinance its $15,000,000 loan before it became due just a month later on January 1, 2019 (ECF No. 7 ¶ 56). The undisputed facts show that WC 56 has paid nothing on its loan obligations since the notice of default and acceleration of the amounts due.[40] At the time it filed for bankruptcy, WC 56 had only $56,671.41 cash on hand,[41] and four entities affiliated with WC 56 had already filed for bankruptcy, as WC 56 disclosed:[42]

**List of Affiliated Entities Filed:**

| Debtor | Relationship | District | Case No. | Date Filed |
|---|---|---|---|---|
| 5th and Red River, LLC | Affiliate | Western Dist. of TX, Austin Division | 19-11527 | 11/4/19 |
| 7400 South Congress, LLC | Affiliate | Western Dist. of TX, Austin Division | 19-11528 | 11/4/19 |
| 900 Cesar Chavez, LLC | Affiliate | Western Dist. of TX, Austin Division | 19-11529 | 11/4/19 |
| 905 Cesar Chavez, LLC | Affiliate | Western Dist. of TX, Austin Division | 19-11530 | 11/4/19 |

[40] Exhibit 10, Declaration of Dean Chang, at ¶ 7; Exhibit 18, Declaration of Chad Milbrandt, at ¶ 4.

[41] ECF No. 26 at 15, *In re WC 56 East Avenue, LLC*, No. 1:19-bk-11649 (W.D. Tex. Bankr. Dec. 2, 2019).

[42] ECF No. 1, at 5, *In re WC 56 East Avenue, LLC*, No. 1:19-bk-11649 (W.D. Tex. Bankr. Dec. 2, 2019).

Since WC 56 filed for bankruptcy, ten other World Class entities have also filed for bankruptcy,[43] and two more were placed into receivership.[44] It is fanciful to suggest that in the absence of the declaration of default for failing to comply with the single-purpose-entity requirement, WC 56 would have paid off $15 million principal due at the end of 2019; refinanced the loan; or otherwise avoided bankruptcy. WC 56's alleged loss-of-credit injury is therefore speculative and insufficient as a matter of law to satisfy the damages element of a breach of contract claim.

27. It is undisputed that: (1) WC 56 has not lost any property through foreclosure, (2) paid nothing on its loan obligations after notice of default and acceleration, and (3) failed to pay off its loan six months after the loan's maturity date. As a matter of law, WC 56 has suffered no legally cognizable damages, and Defendants are therefore entitled to summary judgment.

## VI. Conclusion

The Court should grant this motion and enter summary judgment that Plaintiff WC 56 East Avenue, LLC take nothing on its claims against Defendants. Defendants pray for such other and further relief, whether at law or in equity, to which they may show themselves to be justly entitled.

DATED: August 3, 2020.

---

[43] The debtors and cause numbers of these filings by affiliated entities pending in the Western District of Texas are: Silicon Hills Campus, LLC (20-10042); WC 2101 W Ben White, LP (20-10182); WC Hirshfeld Moore, LLC (20-10251); WC 103 East Fifth, LLC (20-10252); WC 320 Congress, LLC (20-10253); WC 422 Congress, LLC (20-10254); WC 805-809 East Sixth, LLC (20-10255); WC 901 East Cesar Chavez, LLC (20-10256); WC 1212 East Sixth, LLC (20-10257); WC 9005 Mountain Ridge, LLC (20-10258).

[44] Exhibit 21, Order Appointing Receiver in *The Roy F. & JoAnn Cole Mitte Foundation v. WC 1st and Trinity, L.P. et al.*, D-1-GN-18-007636, 126th Judicial District, Travis County, Texas.

Respectfully submitted,

GRAVES DOUGHERTY HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas 78701
Telephone: (512) 480-5600
Facsimile: (512) 480-5862

By: /s/David A. King
David A. King
State Bar No. 24083310
dking@gdhm.com
William Christian
State Bar No. 00793505
wchristian@gdhm.com
Brian T. Cumings
State Bar No. 24082882
bcumings@gdhm.com

*COUNSEL FOR DEFENDANTS*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following attorneys of record for Plaintiff:

Joseph J. McMahon Jr.
Daniel K. Astin
Ciardi & Astin
1204 N. King Street
Wilmington, DE 19801

Albert A. Ciardi
Walter W. Gouldsbury III
One Commerce Square
2005 Market Street, Suite 3500
Philadelphia, PA 19103

/s/David A. King